IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARTAN SOFTWARE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DRS SENSORS & TARGETING SYSTEMS, )<br>INC., formerly known as DRS OPTRONICS, )<br>INC., )<br>)<br>Defendant. ) | Civil Action No. 06-1147<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

The present case is a breach of contract action arising out of a two licensing agreements. The first agreement, dated July 10, 2000, is between Defendant DRS Sensors & Targeting Systems, Inc. (the "Defendant") and Texas Instruments Incorporated ("Texas Instruments") ("the DRS Agreement").[1] (Document No. 15-1, "Complaint" at ¶ 17).  Under the DRS Agreement, Tartan Software, Inc. (the "Plaintiff") alleges that the Defendant was granted a non-exclusive license to sublicense certain technology ("Tartan Ada Runtime Objects") in exchange for a sublicense fee (the "Runtime Object Sub-License Fee"). *Id.* at ¶ 22.  The Plaintiff alleges that the license included a version of the Tartan Ada Development System ("TADS"). *Id.* at ¶ 21. The DRS Agreement also included a one-year maintenance and support plan, which the Plaintiff alleges the Defendant has renewed on an annual basis since 2000. *Id.* at ¶¶ 19-20.

The second agreement, dated September 3, 2003, is a product license and transfer agreement between Texas Instruments and Jeffrey Farbacher ("Farbacher") t/d/b/a/ Tartan Software, Inc. ("the Farbacher Agreement"). *Id.* at ¶ 24.  The Plaintiff alleges that Farbacher

---

[1] Texas Instruments is not a party to this litigation.

subsequently assigned his rights under the Farbacher Agreement to the Plaintiff. *Id.* at ¶ 25. Accordingly, pursuant to the Farbacher Agreement, the Plaintiff claims that it obtained the worldwide license to use, support, maintain and modify TADS and to market, distribute and sublicense TADS products. *Id.* at ¶ 26. The Plaintiff also claims that pursuant to the Farbacher Agreement, Texas Instruments transferred to the Plaintiff all of the rights and claims that Texas Instruments had against third parties based on TADS licensing and/or maintenance fees owed to Texas Instruments. *Id.* at ¶ 27. Additionally, the Plaintiff claims that under the Farbacher Agreement, the Plaintiff is now responsible for collecting licensing and maintenance fees owed to Texas Instruments by third parties under prior and existing contracts for TADS-related products. *Id.* at ¶ 28.

Pending before this Court is the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Defendant's Motion"). [DE 16]. The Defendant moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) because, the Defendant argues, the Plaintiff lacks standing to bring this claim. The Defendant argues that there is no privity of contract between the Defendant and the Plaintiff under the DRS Agreement, and that the Plaintiff has no enforceable or binding assignment from Texas Instruments that would allow the Plaintiff to stand in the place of Texas Instruments under the DRS Agreement. The Defendant also claims the Plaintiff lacks standing because the Plaintiff has failed to show that the Farbacher Agreement was assigned to the Plaintiff or that the Plaintiff has any right to pursue contract claims for unpaid fees allegedly owed by the Defendant to Texas Instruments.

In addition, the Defendant moves to dismiss the allegations set forth in the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, because the Plaintiff's causes of action are preempted by the Copyright Act.

For the reasons set forth below, the Defendant's Motion [DE 16] is DENIED.

**II.      PROCEDURAL HISTORY**

The Plaintiff initially filed its complaint in this action on August 29, 2006. (Document No. 1). Subsequently, on November 8, 2006, the Defendant moved to dismiss the Plaintiff's complaint in its entirety. (Document No. 4). On November 28, 2006, the Plaintiff filed its First Amended Complaint (Document No. 15) and consequently, on December 13, 2006, the Court entered a text-only order denying the Defendant's Motion to Dismiss as moot. On December 15, 2006, the Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint (Document No. 16) which was fully briefed as of February 2, 2007. (*See* Document No. 21). On April 6, 2007, this case, which was first assigned to Judge Hardiman, was transferred to Judge Fischer following Judge Hardiman's elevation to the Court of Appeals for the Third Circuit. On June 19, 2007, this Court held a case management conference during which the parties discussed their agreement to enter into mediation. On August 29, 2007, the parties mediated this case, however, settlement was not reached. (*See* Document No. 34). Accordingly, the Court requested that the parties file with the Court briefs discussing any changes in the case law since Defendant's Motion and subsequent briefs were filed. (Text Only Order of September 4, 2007). On September 18 and 19, 2007, the parties notified the Court that the case law with respect to Defendant's Motion and the Plaintiff's response thereto remained current. (Document Nos. 35 & 37). Having received such statements from the parties, the Court now considers the Defendant's Motion.

**III.     LEGAL ANALYSIS**

As set forth above, the Defendant moves to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(1), challenging this court's subject matter jurisdiction over this action by claiming the Plaintiff lacks standing to sue, and pursuant to Rule 12(b)(6), arguing that the Plaintiff fails to state a claim upon which relief can be granted, because the Plaintiff's claims are preempted by the Copyright Act.  When a movant invokes multiples bases for a motion to dismiss, the court should consider the Rule 12(b)(1) challenge first because all other defenses will become moot if the court must dismiss the complaint for lack of subject matter jurisdiction.  *Hoyoung Song v. Klapakas*, 2007 WL 1101283, *2 (E.D. Pa. 2007); (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).  Accordingly, the Court will first consider the Defendant's challenge to this Court's subject matter jurisdiction pursuant to Rule 12(b)(1).

   *A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court must distinguish between facial attacks and factual attacks.  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  A facial attack challenges the sufficiency of the pleadings, and the court must accept the Plaintiff's allegations as true.  *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002).  In contrast, when considering a factual attack, the court does not accord a plaintiff's allegations any presumption of truth.  In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings.  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

In this case, there is disagreement among the parties as to the nature of the motion to dismiss; the Defendant characterizes the motion as a factual attack while the Plaintiff maintains

that the attack is facial.  In its motion to dismiss, the Defendant does not challenge the sufficiency of the pleadings; rather, the Defendant claims that because there is no evidence of a valid assignment from Farbacher to the Plaintiff and because the language of the Farbacher Agreement does not entitle Farbacher or the Plaintiff to seek damages from the Defendant, the Plaintiff lacks standing.  Accordingly, the Court finds that the Defendant challenges facts related to jurisdiction, not how those facts were pled; therefore, the Defendant's 12(b)(1) motion is a factual attack.  *See Atkinson*, 473 F.3d at 514.

As a factual challenge, the court must weigh the evidence related to jurisdiction.  Unlike a facial attack, the burden to establish subject matter jurisdiction rests with the Plaintiff in a factual attack.  *Gould*, 220 F.3d at 178.  However, the Plaintiff must be given an opportunity to present evidence in support of its jurisdictional claims.  *Id.* at 177.  In cases where further discovery will aid in assisting jurisdictional questions, the court has discretion to permit further discovery and amended pleadings.  *See Atkinson*, 473 F.3d 506.[2]

The Defendant also argues that the Plaintiff lacks standing based on the language of the Farbacher Agreement, because the agreement does not grant Farbacher or the Plaintiff any right to collect unpaid sublicense fees.  This argument, however, relates to contract construction and interpretation, not the jurisdiction of this court.  Accordingly, this is not an appropriate basis on which to dismiss this case pursuant to Rule 12(b)(1) as this argument goes to the to the merits of the claim, not to the Plaintiff's standing to raise such claim.

For the foregoing reasons, the Defendant's 12(b)(1) motion to dismiss is **DENIED**. Pursuant to the Third Circuit Court of Appeals' decision in *Atkinson,* and in accordance with the Order of Court to follow, on or before November 5, 2007, the Plaintiff shall file with the Court a

---

[2]To that end, the Court takes notice of the Plaintiff's requests in its response to Defendant's Motion for an opportunity to submit additional evidence in support of its claim that Farbacher has assigned his rights to the Plaintiff.

Second Amended Complaint attaching evidence of the assignment from Farbacher to the Plaintiff.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Defendant also moves to dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the Plaintiff's claims for breach of contract and specific performance are preempted by § 301 of the Copyright Act. 17 U.S.C. § 301. When considering a Rule 12(b)(6) motion, a court is required to accept as true all allegations of the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); (citing *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); and *D.P. Enter. Inc. v. Bucks County Cmty. Coll.*, 725, F.2d 943, 944 (3d Cir. 1984)). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Evancho*, 423 F.3d at 351 (quoting *D.P. Enter.*, 725 F.2d at 944); (citing *Richardson v. Pa. Dep't of Health*, 561 F.2d 489, 492 (3d Cir. 1977)). Under this standard, a complaint will be deemed to have alleged sufficient facts if it adequately puts the defendant on notice of the essential elements of plaintiff's claim. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

Under the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a), a complaint requires only a short and plain statement showing a right to relief rather than a "detailed recitation of proof that in the end establish[es] such a right." *Pryor v. NCAA*, 288 F.3d 548, 564 (3d Cir. 2002). Overall, "courts have an obligation. . . to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Doug Grant, Inc. v. Great Bay Casino Corp.*,

232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).  Finally, in a motion to dismiss pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the complaint fails to state a claim. *Gould*, 220 F.3d at 178.

  The Defendant argues that Plaintiff's claims must be dismissed because such claims are preempted by the Copyright Act.  In order for a state common law or statutory claim to be preempted by he Copyright Act, the Defendant must demonstrate that (1) the work in question falls within the type of works protected by the Copyright Act; and (2) the state law seeks to enforce rights that are equivalent to any of the exclusive rights of copyright found in Section 106 of the Copyright Act. 17 U.S.C. § 301.  *See also*, *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 216-17 (3d Cir. 2002); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 563-564 (D.N.J. 2002).  In this case, there is no dispute that the work in question, software, falls within the types of works protected under the statute. Consequently, the only issue is whether the Plaintiff's breach of contract and specific performance claims are among the exclusive rights of copyright provided for under Section 106 of the Copyright Act.

### *I. Plaintiff's Breach of Contract Claim (Count 1)*

The Defendant argues that the Plaintiff's breach of contract claim is preempted by the Copyright Act because its seeks to enforce rights granted under the Copyright Act; namely, the exclusive right of distribution. The Defendant argues, *inter alia*, that the Plaintiff's breach of contract claim is equivalent to a claim for illegal distribution under the Copyright Act. In response, the Plaintiff argues that its breach of contract claim is qualitatively different from the exclusive right to distribution granted under the Copyright Act because the breach contract claim contains an "extra element" not provided for under the statute, thereby distinguishing Plaintiff's breach of contract claim from a copyright infringement claim. *MCS Services, Inc. v. Johnsen*, 2002 WL 32348500, *5 (E.D. Pa. 2002). Specifically, the Plaintiff argues, the DRS Agreement contains a promise to pay. (Document No. 2, Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Plaintiff's Response") at pp. 6-8).

The Third Circuit has applied this "extra element" standard in determining issues of equivalence generally, although not in the context of breach of contract claims. *Dun & Bradstreet Software*, 307 F.3d at 217. In *Dun & Bradstreet*, the court found that "if a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)).

District courts within the Third Circuit that have considered the "extra element" issue in the context of breach of contract claims agree that such claims entail an element not provided for under Section 301 – a promise by the defendant – and are therefore not preempted by the

8

Copyright Act.[3]  *See e.g.*, *Video Pipeline*, 210 F. Supp. 2d 552; *MCS Services,* 2002 WL 32348500; *Expediters Int'l v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F.Supp. 468 (D.N.J.1998).  This view is in accordance with the Courts of Appeal of the Sixth and Ninth circuits, which have specifically held that a promise to pay makes a breach of contract claim qualitatively different from a copyright infringement claim.  *See Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004); *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2003).[4]  In this case, the Plaintiff alleges that the DRS Agreement includes a promise by the Defendant to pay a sublicense fee which was never collected.  This promise to pay constitutes a right that has no equivalent under the Copyright Act, and, as such, is not preempted by the statute.

The Defendant further argues that because the Plaintiff does not specify the amount of the sublicense fee in its complaint that no enforceable promise to pay exists; therefore, the Plaintiff's claims are essentially those of illegal distribution.  This argument is unavailing, however, because in a 12(b)(6) motion, the court is to consider all well-pleaded allegations in a light most favorable to the non-moving party.  In this case, while the Plaintiff has not specified the exact amount of the fee which it claims it was owed by the Defendant, it has alleged that such a fee exists, an allegation that is supported by the language of the DRS Agreement. (Complaint at Exhibit 1, ¶ 2.7.1).  As such, the fact that the Plaintiff has not specified the exact

---

[3]In *MCS Services*, the court explained, "the general rule is that matters involving breach of contract claims are not preempted because a breach of contract claim requires an 'extra element' that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant." *MCS Services, Inc. v. Johnsen*, 2002 WL 32348500, *5 (E.D. Pa. 2002) (quoting *Expediters Int'l, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F.Supp. 468, 483 (D.N.J.1998)).

[4]Furthermore, four courts of appeal hold an even broader view that contract rights, generally, are not equivalent to those bestowed by the Copyright Act.  *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996); *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 433 (8th Cir. 1993); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Acorn Structures v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).

9

amount of the sublicense fee does not provide a sufficient basis on which to find the Plaintiff's claims equivalent to a claim of illegal distribution under the Copyright Act.

### ii. Plaintiff's Specific Performance Claim (Count 3)[5]

The Defendant also moves to dismiss the Plaintiff's claims for specific performance pursuant to Rule 12(b)(6). The Plaintiff alleges that pursuant to the DRS Agreement, the Defendant must certify that it has destroyed all copies of the TADS software in its possession upon the termination of the DRS Agreement. The Defendant argues that this claim should be dismissed because it is preempted by Section 503 of the Copyright Act. The Court concurs with the Defendant that Section 503 of the Copyright Act specifically grants federal courts the power to order certain remedies, including the destruction of copies found to be in violation of the Copyright Act. 17 U.S.C. § 503. However, as set forth in 17 U.S.C. § 301(a), the Copyright Act preempts only rights, not remedies.

> On and after January 1, 1978, ***all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106*** in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.

17 U.S.C. § 301(a) (emphasis added). Accordingly, pursuant to the explicit language of 17 U.S.C. § 301(a), the Court cannot conclude that the Plaintiff's claim is preempted simply because the DRS Agreement provides a remedy for breach of contract that is also provided pursuant to the Copyright Act. *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 435 (8th Cir. 1993).

---

[5] Plaintiff's Complaint contains only Counts 1 and 3. It does not allege a Count 2.

**IV.     CONCLUSION**

For the foregoing reasons, the Defendant's Motion is DENIED.  An appropriate Order follows.


Dated: October 11, 2007

              s/ Nora Barry Fischer_____
              Nora Barry Fischer
              United States District Judge